case number 20-3017 United States of America versus Asa Lea also known as Asa Lorenzo I.M.I.A. Lea appellant. Mr. Welch for the appellant, Mr. Rendell for the appellee. Good morning counsel you may proceed when you're ready. Good morning may it please the court I'm William Welch and I am representing the I'd like to speak with you this morning about when government agents seized Mr. Lea then interrogated him without Miranda warnings then searched him in his belongings all without a warrant or probable cause. Mr. Lea's position is that the court should have granted his motions to suppress and the district court should have taken the opportunity to correct its error by granting its post his Mr. Lea's post trial motions. Ultimately, the agent's testimony about a brown hand rolled marijuana cigarette which they claim to have smelled and seen from across the street somehow just disappearing is inherently incredible. Trial also made apparent that the agent did not seize marijuana at all like they had claimed that they did not test for DNA as they had promised and that the district court should have reconsidered its suppression ruling because by the time Mr. Lee made motion for judgment of acquittal, all of this should have been apparent to the district court. First officers made a constraint and seized Mr. Lee. Mr Welch, can I ask you you referred to the officers claiming to have seen and smelled the marijuana from across the street but the district court after a hearing held that the officer saw Lee smoking what smelled to them like a marijuana cigarette. That's a JA 98 and that's a factual determination based on an evidentiary hearing. So don't we have to accept for purposes of this appeal the that factual findings? You would judge Pillar if that had been the entire record. But while that was perhaps all that the court had, the district court had as of the suppression hearing when it made its ruling to jury trials later, by the time we made post trial motions made apparent that that wasn't all of the information that what came out during cross examination in the trials was that there never was a marijuana cigarette. Yeah. And so, although ordinarily appeals courts would be reluctant to consider the additional evidence if the district court hadn't had the opportunity to correct its error, at least the Seventh Circuit has decided that the appeals court should consider the complete record when, um, the did have that opportunity and the authority that I would cite for that. It's in your brief. What do you mean? You said at trial, it came out that there never was a marijuana cigarette. Well, ultimately, the officer who had testified at the suppression hearing and the second officer who was with him did testify at trial, and they ended up testifying that I want to get this right. So I wanna quote from them that basically, um, they saw it from across the street, but then they never found it that they put it on. That's different from, uh, you're saying that the officers changed their testimony by saying there never was a sighting. Well, I didn't, and I'm glad you asked because I didn't mean to say that they never said they saw it. Um, they claim to have seen one. And the argument that Mr Lee is making is that, well, how can that be right if they never recovered it? That it just disappeared. There was never any testimony that, you know, something interfered with their search, that the wind blew it away, or somebody stole it, or it fell down a storm drain. Nothing like that. I thought one of the officers did say that. Maybe it blew away. It's March. Well, he did. One of the officers did say that, but that just doesn't make any sense. I mean, he says why not put on the bench? Why not? They're outside. It was speculation that he never said, Oh, it did blow away. He said, Maybe it blew away. But it would be like me saying that. Oh, gee, all of my papers just blew away from me right now. I could say that. Except it's different in the sense that you care about your papers and you're working with them. Whereas here it doesn't seem like they were going to arrest Mr Lee simply for for the marijuana. They were going to say to him. And then by the time they had an arrest and the crime scene detective coming around to secure evidence, the gun was the focus, not the single marijuana cigarette. So why would they? I mean, it just seems correct. Explain to me why it isn't fully plausible to think that honest and well meaning officers would have disregarded the marijuana cigarette on this crime scene under the circumstances as recounted. Well, because at that time it was not just a focus on a gun. They thought they had a major drug trafficking bust. Initially, the charges in this case were possession with the intent to distribute marijuana and, uh, person, which is ultimately what went to trial a 9 22 G charge and a 9 24 C charge for having a gun in furtherance of drug trafficking. Just before we went to trial, the government entered Nali Prasik way to the 9 24 C charge and the possession with intent to distribute charges. So for trial purposes, yes, the focus was the gun. But during the investigation, I would disagree that the gun was the focus of this investigation. Well, with due respect, Judge Pillard's question was going to what the officers were confronting at the time there in the bus shelter. In other words, I didn't see any suggestion that they thought they had a shelter. Rather, they were going to cite him for smoking illegally in their presence. Well, I hear you, Judge Rogers. But and that was ultimately what they were saying when it got down to just a 9 22 G trial. But that's not what they wrote in the affidavit, for instance, seeking Mr Lee's DNA. Oh, I understand that. But we're at the bus shelter at this point. That's the focus. I thought of Judge Pillard's question and certainly in my question. I think two officers, they testifies to what they saw and what they thought they smelled. Um, and then they spoke to your client. And they asked him what he was smoking. He said weed. He thought it was legal. They told him it wasn't or vice versa. So you are. You're not arguing. I didn't see this in your brief that the officers had no grounds to cite him for a crime committed in their presence. Well, except if there never was a case that they would not have had a basis to cite him. Well, they said they saw a brown, apparently wrapped cigarette that they smelled marijuana. And as I got closer to him, they smelled it more. And they said, We're transit police. What are you smoking? And, of course, it's our position that they had seized him, proceeded right to a custodial interrogation without Miranda warnings and then searched him all without a word. Right. So the theory is go ahead. What's your strongest authority for that? Well, there isn't anything immediately on point like identical facts. But our position is the cases that we cited in the brief. Um, that basically, um, Lewis case 9 21 Federal 2nd 12 94 that this wasn't some friendly conversation. This is officers immediately seizing a person making a constraint and then proceeding right to an incriminating interrogation. So wait, wait, wait. That doesn't actually even make sense. So if so, the theory is assuming that there was no marijuana cigarette, the theory is that the officers approach that they put him in a situation which he does not feel free to leave in the bus shelter, which has the three sides and they're sort of facing him. And then they ask him what he's smoking, which which is what triggers the incriminating information. But why would they ask him what he's smoking if he doesn't have a marijuana cigarette? Are you think or the theory is that it's a it's a tobacco cigarette? Exactly. They wouldn't need to ask him if they knew it was marijuana. If they had really smelled marijuana last you are, you already know you can just write the Unfortunately, the case illustrates why they ask because they get a confession from him. They get an acknowledgement from him. And, you know, and it makes sense. Even he explains he doesn't think that's illegal. But it turns out smoking a public it is. Well, it's our position that he's only making those statements as a submission to their authority because seized him. I understand. Yeah. Yeah, I see that I'm over my time. But does the court have any other questions for me? Why don't we hear from the government that will give you a couple of minutes and rebuttal. Thank you, Your Honor. Good morning, Your Honors and may please the court. I'm Daniel Randolph on behalf of the United States. The district court correctly ruled that this was not a seizure prior to appellant's arrest. In fact, nearly all of the relevant factors here indicate that this wasn't a seizure. There was no physical contact prior to the actual handcuffing. The officers had their weapons and their equipment concealed throughout the encounter. They were wearing plain clothes. They used a calm tone of voice and never raised their voices throughout the encounter. And this happened in broad daylight. This was around 4 15 in the afternoon, March afternoon near an intersection. There were a few onlookers across the street. So again, nearly all of the factors that this court considers in the seizure analysis confirmed that this just was not a seizure and that the district court correctly found as such, like to does it matter, Mr Randolph, whether it was a seizure unless we were to discredit the sight and smell of the marijuana cigarette. And we can assume that it was a seizure a la Terry stop. And there but but if there was reasonable suspicion for them to stop him, um, we don't. We don't actually have to get into whether this is different or the same as Bostick or Drayton or Lewis or any other case, right? That's correct, Your Honor. We think there are several grounds that this court could affirm the district court's ruling on and a separate independent ground would be that there was probable cause or reasonable suspicion at the outset of the officers essentially witnessed. I want to commit a criminal offense in front of them. They saw him smoking a cigarette across the street. He was the only one in the vicinity who was smoking on. They both were experienced officers. They had been with the transit police for over 10 years, each of them on. They had experience enforcing these types of violations. They certainly knew what marijuana smoke smelled like, and they identified the smell of smoke as marijuana smoke. We cited a few cases that are not on all fours here, but certainly we think there was probable cause and at least reasonable suspicion for this encounter at the very outset. And Your Honor is correct that in light of that ruling, there would be there would be no reason to there would be no need to reach the seizure inquiry here. And just to be clear, the officers were not preparing to arrest him for that offense. They were preparing to give him a citation. But when they couldn't identify him with any reliability, they then they felt that they had to arrest him. That's correct, Your Honor. And I believe it was Officer Willie who testified about this at trial that it was sort of sort of standard procedure that they would generally write a criminal citation, which I believe was a $25 ticket for smoking marijuana in public. But that when appellant provided false false name, false date of birth, lied about having about not having he said he had no idea, but he did have an I. D. Uh, when the police were not able to identify him, that's when, uh, they followed their standard protocols and proceeded to arrest him because they were unable to write a criminal citation. I did. I did want to address the this, uh, inherent and credibility argument that appellant brings. I think it's important to know before you do that. Could I just be clear? Um, you said they followed their standard protocol because they were not able to write a citation. Why not? Because they, uh, at that point, appellant had provided, uh, a name to them on a date of birth on day ran that an appellant had also told the police that he had previously been arrested on. They ran his name. They ran the name and date of birth that he gave them through the links database on. There was no match. They also ran a warrant check for the name, and there was no match. So they were unable to be clear. I haven't seen a citation, but you put the person's name on the citation and some identifying information. I don't believe that's in the record. Yes, your honor. But I assume so. Yes. So you can't cite a person without knowing who they are. And presumably the or I don't know, does the, uh, police department keep a record of the individuals to whom they issue citations? Your honor, I believe that the testimony was that this links database, uh, included, uh, you know, previous arrests and other sort of interfaces with law enforcement. And so based on a negative, uh, result in that database and based on, uh, the fact that there was a negative return on the warrant check as well, they were unable to confirm his identity. And so at that point, there was there was a conclusion that most likely this was a false name that had been provided. And so without being able to confirm his identity, it was not possible to write the criminal citation. And just out of curiosity in the record before the district court, was there any information about the nature of eighth and K streets northeast? Your honor, there were, uh, at trial, there were photos of the bus shelters that were introduced. Um, I recall that there were there was certainly testimony about there being, uh, onlookers on the other side of the street, opposite of where the bus shelter was. I suppose what I'm getting at is, is it a residential area as opposed to a commercial area in terms of the width of the street? Your honor, it's I can't pinpoint this in the record, but both streets are two lane streets. They're in a residential, a residential area. Thank you. Unless there are further questions on the Fourth Amendment question, I did want to briefly address the inherent and credibility argument. I think it's important to emphasize here that in addition to the argument, uh, failing on the merits, I think it's important to emphasize here that appellant did not at any point move the district court to reconsider its suppression ruling. Uh, it's at 6 73 in the record. Appellants motion. It was a rule. It was very clearly titled as a rule 29 motion for judgment of acquittal and a rule 33 motion for a new trial. There is not a single mention in that motion, uh, of a request that the district court reconsider its suppression ruling. And there's not, uh, in fact, the word reconsider is not even used in the motion. Um, the government read the motion as it was, as it was written. Uh, the district court read the motion as it was written and ruled on those on the rule 29 and rule 33 motions. Uh, and there was never any follow up from appellant saying, you know what we really meant to file here was a motion to reconsider the suppression ruling. I don't understand this argument. Isn't that the whole point? That's the whole basis of the of the trial. He wants a judgment of acquittal. He doesn't care. He doesn't need to care about the motion to suppress ruling. At that point, we've we've moved beyond that. He's gone to trial twice. Your Honor, his argument in the rule 29 and rule 33 motion was that because there was a missing cigarette butt because the government could not present physical evidence of the of the cigarette butt at trial, uh, that that meant that the trial testimony, all of the trial testimony, uh, of the officers was inherently incredible, including on the issue. And this was this is critical here. The only thing that mattered when it came to the motion for judgment of acquittal and the motion for new trial was evidence of guilt. And on that there was only there were only two contested elements here and really only one. It was whether appellant knowingly possessed a firearm in question on March 5th, 2019. And to support that element of guilt, the government produced the direct testimony of two officers. The government produced physical evidence, including the gun itself that corroborated that direct testimony, and the government elicited testimony from a third officer, Officer Channon, who was the crime scene technician who who respond to the scene within 15 minutes on who processed the evidence and recovered, uh, processed the gun and processed the other physical evidence. And that was also consistent with the testimony of, uh, Officer Woods and Officer Wooley. So, uh, the ultimate question that the district court resolved was whether there was sufficient evidence for a rational juror to find that appellant knowingly possessed a weapon on March 5th, 2019 a firearm. And so, you know, I think that there's really no doubt here that the district court's ruling on that question that was presented to it was correct. And the issue that appellant it's a separate issue that appellants raising on appeal here. It's still it still fails on the merits, but I do think it's important to point out that there's a procedural problem with the appellant is making here for the first time on appeal is what you're saying that that the new trial motion wasn't framed in terms of the error in failing to suppress that it was framed only in terms of this separate inherent incredibility argument. I thought the two were kind of working together that they were seeking to suppress for the on the Fourth Amendment grounds, and they were saying that there was inherent incredibility vis a vis the evidence. Your Honor, the way that the government read the motion below and the way the district court read the motion below was that this was going to the credibility of the officer's trial testimony as it related to the question of guilt. And there was no motion to reconsider the suppression ruling. And you know, to the extent there's any ambiguity there, I think I think the other point to emphasize here is just that this court would have to find just on the merits, even even assuming that this the motion to reconsider the suppression ruling had somehow been proper properly presented, this court would have to find it would have to be firmly convinced that two officers came in and took the took the stand and lied under oath. And I think it's far more plausible that the cigarette was knocked off the bench in the course of the apprehending appellant arresting him. There was a scuffle. Perhaps appellant knocked the cigarette or cigarette off the bench. Perhaps it blew away as officer one of the officers suggested a trial. I think that there are any number of plausible reasons why they were not able to find the cigarette. But at the end of the day, and as as your honors pointed out earlier, this was not their primary concern. And they testified to that at trial that once they had recovered a firearm on appellant, that became their primary concern and was recovering the firearm and processing the other physical evidence that was recovered at the scene. I see that my time has expired, your honors. If there are no further questions, we would ask that the court affirm the judgment of the district court. Thank you. I just just I just wanted to follow up on that your argument about them not having about the defendant not having raised the challenge the suppression as such. I don't recall that being the way you framed it in your brief. That may be correct, your honor. I think we I think we did not specifically address that point in our brief. I however, I do think our brief is consistent with the fact that this was read by the government throughout as a on the questions of guilt. And the fact is missing. That's one way to read the motion. There's another way to read the motion. But we don't need to get into all that. That's why I'm not sure why you're arguing this. But in any event, I think we get your argument or judge pillared. Did you want something done? Thanks. All right, Judge Walker. Thanks. All right, counsel. Thank you very much. Council for appellant. Give you a couple of minutes. Thank you, Judge Rogers. Um, I do recall from the trial exhibits that this was a neighborhood of row houses where the bus stop was. That was a question that you had you had posed. Um, can I ask a question about something you said earlier? You said that the gun wasn't the focus. Um, that at a fairly high level drug dealer. Can you explain that a little bit more? Yes. Why? There was a search of Mr Lee's backpack, um, toward the end of this investigation. And in that backpack, there was several bags of a plant substance recovered. They testified how they suspected that that was marijuana. However, when it was tested and analyzed, the chemist testified it was not. So there was never any marijuana in this case. Um, one of the other problems with the officer's testimony is, um, the officer saying that he saw Mr Lee smoking, uh, marijuana cigarette and he smelled marijuana is the same one who made out an affidavit for Mr Lee's DNA promised the court that certain things were going to be done. And then they weren't done in this case. And so remind me, Mr Welsh, what happened with the testing? Did it? You said it came back that it wasn't marijuana. It was not marijuana, which is which is part of the reason why the drug trafficking charges and the 9 24 C never went forward. This was by the time we got even to the first trial, only a 9 22 G charge that went forward. And so ultimately, what we're saying is, Hey, the the officer who's saying he smelled the marijuana cigarette who you relied on for suppression also admits that he was not truthful with the magistrate who he filled out an affidavit and got a warrant for DNA on. So how do you believe this guy? Especially because no marijuana cigarette was ever recovered. None of the other evidence that they claim to have seen was lost. How come this one critical piece of evidence that gets the whole thing going is the only thing that doesn't exist. Um, if the court has any other questions for me, I'm happy to answer them. Otherwise, I'm prepared to submit. Thank you. We'll take the case under advisement. Thank you.
judges: Rogers, Pillard, Walker